and Mr. Vlahakis. May it please the court. I apologize for my voice. I've got pretty bad asthma today. I represent Neal Preston, who is the appellant in this case. This case presents an appeal from the district court where we had alleged in a putative class action three separate claims against a letter. One brief housekeeping matter I would like to address though. I did notice in preparing for today's argument that the appellate brief contained an image of the envelope in question, but in fact it contained an image from another case that I had. The appellate brief on page three depicts this letter here. In the complaint that's attached to the appellate brief at page six, there's the proper image. I want the court to just note that. There's nothing different with that. The issue that we have in the case is this is the original letter, which is attached to the complaint, which is up on appeal. It contains an envelope that we believe violates the clear edict of the FDCPA, in particular section 1692 F8, which says that it would be improper for debt collectors to identify any language on an envelope other than their name if their name doesn't imply that they're a debt collector. And here the district court used a benign language exception that's been followed by both the Fifth Circuit in the Goswami case and the Eighth Circuit in the Strand case. And as we've set forth in the briefs, because of the clear language that applies to this particular subsection, we don't think the court needed to go beyond the plain language to divine the judicially created exception. This exception goes beyond what the FDCPA calls for. The issue with the letter is that it implies based on language that's also inside the letter that it urges a consumer to open the letter and identify the contents of it as being time-sensitive when they're not. There's a false sense of urgency, which is what we allege in count three of the complaint in both an individual and as a class-based claim. Counsel, can I ask you a question about the second point in the least sophisticated consumer standard? So as I understand your argument, you're saying that your client, as well as the class members he represents, were put in an appreciable risk of harm because they were risked thinking, you know, he risked thinking that there was time sensitivity and a sense of urgency, correct? Correct. And then as I understand it, your second part in the least sophisticated consumer piece suggests really, and some of our cases suggest this, so I just want to clarify, that it is really almost impossible for a case to go on a motion to dismiss because jurors rather than judges are better suited to determining? That's correct. We identify that in our briefs. We, especially where the difficulty I think is that the district court then looked at what other courts have done in terms of looking at this benign language saying, oh, there's really no harm that's done by this. But why is that language being put there? That language is there for a purpose. This envelope has a distinct sort of look to it. There's an envelope within an envelope and once you open that, you have to get to the letter. So that's almost in a way giving the consumer a pause, a moment to look at this, this must be, something is going on here. They open it up, the letter then folds out and it's not just a normal letter size, it's about 14 inches long in length. And as we identify in our appellate brief, the language that's there, it's formatted very specifically to draw the user's or the reader's attention to certain elements of the letter. And when we're looking at how all this combines together. Forgive me, forgive me. I'm Judge Rovner. Good morning. Good morning, Your Honor. Do I understand you to be arguing that the settlement offers for 40% and 20% off did not actually expire on August 18, 2017? Yes, Your Honor, that's correct. Where in the record is the evidence that the offer did not really expire? That is not in the record. We're on a motion to dismiss stage. I think what could be demonstrated is that there's subsequent letters that were received after the filing of this complaint that if this court wants us to supplement the record, we can do that. This offer is continually being made to people. It's a series of letters that comes out with the 40 to 20% off. So the benefits of paying the call us today, the offer expiration date, all that language that we highlight is there to create a false sense of urgency with the unsophisticated consumer. Now, we recognize, as the district court did, that the Miller v. McCullough language of we are not obligated to renew any offers is way at the very bottom of this letter here. Now, the district court looked at that and said, well, that's not hidden in any way, shape, or form, but it's there for a purpose, I think. And I think that we've alleged that it is and that it's hard for a district court to analyze what a person's going to see. Their eyes are being drawn. Forgive me, but aren't all uncollected debts time sensitive in some manner? In other words, I mean, the longer a debt sits around, the worse it normally is for the debtor, either because interest is accruing or one's credit score will continue to decline. I would generally agree with that, Your Honor. But in this case, what Midland Credit does is Midland Credit, through their various entities, they're purchasing debts that have been sold to them. They're debt buyers. So this debt is very old debt. So what they're attempting to do is use whatever language they can to entice the consumer into paying debt that is rather old. Sometimes they even buy, this is not the case here, time bar debt. And that debt is so far down the line, generally people recognize that if the debt's not paid within 60 days, it's going to be very difficult to collect on that. So here, this is debt that's many years old, and they do whatever they can on this letter to encourage that to be done. And that's why we've alleged it and then bury the language that says we're not obligated to renew this at the very bottom here, just above the payment coupon. If they really wanted to identify all the pertinent information, that should be someplace up, more in the body of the letter, in a highlighted box of some kind. But everything else they're trying to urge that consumer to do is noted here in the top portion of the letter. So by design, we've argued that that language being placed there is there to minimize that. So somebody does not fully understand the nature of this offer being something that could happen in the future, could be given in the future. Sorry, I have another question for you. In some sense, could it be argued that the words time sensitive on the front of the envelope help and don't hurt the debtor? It's true that in this day and age, with the deluge of junk mail that we all receive, a debtor might not open a piece of mail that looks like junk mail. Does this help the debtor who might throw the envelope away but actually wants to clear up her debt? That's a very good question. I think that's one that's difficult to answer on a motion to dismiss. One could make that argument, but that's something that I think shows the difficulty that district courts may have with analyzing how this letter is going to be interpreted. There is some moral benefit, I think, that people have discussed or the court has discussed in other cases of paying debt, even if it's a time-barred debt, because people want to be able to pay their debts. Some people just can't do it. But here, though, the design of this, because it's time sensitive, is tied to, as we've alleged in the complaint, this false notion that this offer is going to expire by certain dates, that there's certain benefits of paying. And then on top of all that, I think the consumer would be confused by the notion that we allege, and I believe it's count five and six of the complaint, that there's no explanation in this letter what happens to that remainder of the debt that's being discounted. And that's another factor I think that could be confusing to a consumer, because here is some entity that's bought debt from another creditor. There's a new creditor being identified, 40% off or 20% off. What happens to the remainder of that? They're saying way too much in this letter without giving the consumer enough information. And the fact that the letter is coming in this manner to maybe alert somebody to the serious nature of this, I think that cuts both ways and cuts, at least at this stage, against the defendant. Because they have taken a risk by adding language to the envelope that is not allowed by the statute. And if we start to sort of look down below that and say, okay, well, this is okay. This is benign. What's next? What other steps are going to be taken by a collector? I see that my time is up. I'll give you an extra minute for a rebuttal. Thank you. Mr. Schultz? May it please the Court? Counselor, my name is David Schultz, and I represent the appellee here. There are two issues before the Court. The first one has to do with the envelope. And what the Court decided was not a violation because of the benign nature of the words on the envelope. I'm in the unique position being here that every court of appeals judge and every trial judge in the country that's addressed this issue has ruled in the same manner and has found that benign language, language like what was on this envelope, does not violate the FDCPA. But it's flatly contrary to what the text of the statute says. Well, the text of the statute and what the courts did when addressing that is they looked and said, 692F is what it has to do with unfair and unconscionable conduct, and it identifies a number of components that can be unfair or unconscionable. And the courts have read that and said, well, the statute would be absurd if anything on an envelope. For instance, if I put a happy face on the envelope, under that interpretation, it would be a violation of the law. That seems absurd. And the courts have said that's clearly not what was meant by the language, and that would not be a proper interpretation of the statute. Every judge has looked at it. What was it Midland Credit's intent that the discounted offers would expire when it said they would on August 18, 2017? Or is it the case, is it the usual case, that these offers get extended? Well, it certainly was the intent for that offer to expire on August 18. That's what they said. They then used, and we're now switching over to the obvious letter, not the envelopes at this point. But with regards to the letters, it's a little bit deja vu all over again. I was here arguing the Every case. It was Every v. RGM, not the Millard McCullough case, that this court provided debt collectors across the country with language to use in settlement letters. There were four cases before the court. Each one of them had different language about times to waste in, take opportunities, this is an opportunity now, et cetera, et cetera, in connection with offers. And the court explained how in a fair balance between sending letters that offer settlement, which is a good thing, not a bad thing, offering 40% is not a bad thing, it's a good thing. And these are not time-barred debts. These are fairly fresh debts. There should be some balance. And this court, to the benefit of the industry, for the last 14 years or so, provided language in that circumstance. And this letter used that language. So the end tech was for it to expire, and they used the language, just like everybody else in the country is. They followed the direction of this court. And going back to the letter, obviously still, you saw it. That language is not hidden anywhere. It's right there. Nothing right around it, really. The only thing below it is the payment stub. What about this point that judges aren't well-equipped to decide what might be confusing to an unsophisticated consumer? Well, I think you've addressed that already in the Evry case. When we do exactly what the Seventh Circuit has said we should do under the exact circumstances facing the court, it can't then be in violation. In fact, there was an effort in a case called Riddle where the Seventh Circuit in a Bartlett offered a safe harbor language 20 years ago. It wasn't combined with the envelope language. No, that's a different issue, but correct. And then somebody sued over the use of that safe harbor language that the Seventh Circuit used. And the trial judge sanctioned that lawyer for filing such a lawsuit, and the Seventh Circuit affirmed. So I don't think there can be a question in this circumstance, well, if you do exactly what the court says, it should be a question of fact on whether it violates. Now, there's nothing, by the way, there's not one thing at fault. The safe harbor language is indeed very far removed from the remainder of the message in the collection letter. Is that within the spirit of the safe harbor? And are there any cases that you can point us to that talk about spacing, size, placement of safe harbor language? Sure. Well, not exactly safe harbor language, but I handle a case called Sims v. G.C. Services. This court decided about 10 years ago, Sims v. G.C., and it had to do with the concept that you're asking about, which is visual overshadowing, essentially. Having a disclosure that's required in that case, the G disclosure, and then somehow hiding it or making it put in a way that's not clear. I remember being here in front of the court, and a judge pulled a letter up just like he did here, and you look at it and say, well, there it is. I see it. I can read it. It's not hidden to me. It was pretty easy to decide, and the court ruled in our favor on that. There's not a ton of visual overshadowing cases. There are some. They talk about the concept of small font. That's not the case here. They talk about the concept of hiding it on the back, maybe without saying anything. That's not the case here. Interestingly, two weeks ago, the CFPB issued a 500-page proposed rulemaking NPR, Notice of Proposed Rules for the Fair Debt Act. One of the things they propose is that every letter, just like this letter, have a pay stub on the bottom. That's not required in the law. That's not required in the act. But they said it's important to have. In this context, what they say is important. We have the notice right in front of it, right in front of that. But I have a question. It does seem to me that the issue in this case is a little bit different than the one in Emory, because here, as I understand it, and maybe counsel can address this in rebuttal, as I understand it, he's not expressing the same kind of fear that he wouldn't be able to have another chance, that the offer wouldn't be renewed, and he wouldn't have another chance at the deal. He's saying that the letter, combined with the envelope, conveyed a sense of urgency. Something bad was going to happen if he didn't act quickly. So the safe harbor may not address that same concern, right? I think you look at this. I think it addresses exactly that concern. The Emory Court, what you were talking about is what's language in the balancing act where we're not making the debt collector say we're never going to make another offer, or we're definitely going to make another offer, and that the consumer should have an opportunity to decide this. And you talk about the whole language. There's two, three paragraphs about why you came to that language. That's the exact scenario you're talking about. This is the balancing act, and it's been addressed. And I don't think there's anything really. He has two separate violations, I suppose, at the end. He tries to combine them, but if there's nothing wrong with the envelope, and every single judge who's ever looked at it has said there's nothing wrong with the envelope. The FTC, in its comments, said there was nothing wrong with this envelope. The Senate report, in passing the law, said there was nothing wrong with this envelope. So if there's nothing wrong with the envelope, and the letter is consistent with what the Seventh Circuit has clearly said is acceptable, I don't think you can combine them and now somehow say, but it's a violation. And even if, as Judge Roldner was pointing out, asking a person to open a letter is not a terrible thing. It's not unfair or unconscionable. I went just yesterday, checked my mail, kind of in preparation for this, seeing what I would get, and I got three letters. Didn't surprise me. One had a whole bunch of bar numbers and other stuff. I don't know what it meant. Another one had language kind of like this, you know, important return information, please respond. Another had a symbol. That's common. It's not unfair. No, I mean, I understand that, and if I were writing the law, maybe I would write it differently, but absurdity is a pretty high standard, and I can imagine lots of reasons why Congress might not have wanted any clutter. They may not have wanted judges in the business of deciding whether something is benign or not. Well, Congress spoke, and they did say that, though. They said it wouldn't be a violation. It's not a violation so long as you're not using symbols and envelopes indicating the context pertaining to debt collection, and there's no symbol or language on this that says it pertains to debt collection. That's the same standard the FTC would use. There's nothing in those words that is unfair or unconscionable. Using any language or symbol other than the debt collector's address on any envelope when communicating with the consumer by the use of the mails, et cetera, et cetera. Correct. But that's part of what the courts have done when they looked at it. They said it's F, and they talk about unfair and unconscionable, and that's part of the claim. It has to arise when this court has decided in many cases, well, is it a material violation? That's the same concept as it arises at that type of level. Turner v. JVDB is a good example. That's a situation where the person had gone through bankruptcy. They then received a collection letter for the debt that went through bankruptcy, and the court said it was a question of whether it was a violation, whether it would reasonably assume that person would understand that to be a violation. It was a question. It didn't automatically, just because debt wasn't owed, rise to that level. Same thing with materiality. But what I was reading was the Senate report where it said the following enumerated practices are violations, and when they discussed that section in the briefs in the cases of the Third and Eighth Circuit Court, they talked about using symbols on envelopes indicating that the context pertained to debt collection. That's what they talked about as the unfair, unconscionable practice with regards to symbols and words on envelopes, and that's not the circumstance we have before the court. So we request that the judgment be affirmed. Thank you, counsel. Roberto? Thank you, Your Honor. One thing I'd like to make very clear, though, in no court has reviewed, other than the district court, this particular envelope. And counsel did mention that the CFPB or, sorry, the FTC had reviewed this envelope. Nobody has before. The other courts, Strand and Gospar, dealt with other extraneous language that was contained on it, and none of those cases included the notion we're arguing here that there's the urgency with regard to not accepting these payment offers, and they will expire. The other issue I'd like to note, though, is with the FTC, sorry, the FTC, the Senate report is only like, I think, five pages long. It's attached to the appellate brief. Counsel just mentioned the CFPB is a 505-page order now trying to explain to debt collectors what they're supposed to do, and that shows just how much things have changed over time. The fact that the FTC in 1988 didn't encounter a letter like this, their commentary at that point in time. You're out of time, counsel, but I'd like you to very briefly answer the question that I raised with your opponent and said I'd like you to address on rebuttal, which is what exactly was the fear? That your client in the class experienced that they weren't sure if this offer would be renewed, or it was a generalized fear that something bad was going to happen if there wasn't a quick response, or what? No, that the offer would not be renewed because when reviewing this and all the different places where the offer is identified, the 40%, 20% off, right down here, that language, the safe harbor there, doesn't, I think, explain to a consumer that this is going to be something that could be renewed later not to worry about. So you're hanging on your hat on the combination. Given that the safe harbor language has been approved before, you're really hanging your hat on the combination of the envelope and the safe harbor language. Yes, and the fact that the court in Bossier recently re-argued on an issue that just because you're utilizing safe harbor doesn't always mean that this will protect you if additional things are being done, such as this letter. Okay, thank you, counsel. I appreciate the extra time. Our next case is United.